UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BENJAMIN E. JACKSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 1:07-cv-0430-DFH-WTL |
| ) | |
| ARVINMERITOR, INC., ) | |
| ) | |
| Defendant. ) | |

ENTRY ON MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

Plaintiff Benjamin Jackson sued defendant ArvinMeritor, Inc. on three counts related to his dismissal from the company. Jackson claims in Count One that the company now owes him vacation, holiday, and severance pay under the Indiana Wage Claims Statute, Ind. Code § 22-2-9-1 *et seq*; the appropriate prejudgment interest under Indiana Code § 24-4.6-1-102; and liquidated damages under Indiana Code § 22-2-5-2. Jackson claims in Count Two that the company criminally converted some items of Jackson's personal property. Jackson claims in Count Three, under the federal Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), that ArvinMeritor did not provide appropriate notice before terminating Jackson's health insurance. ArvinMeritor has moved for judgment on the pleadings regarding the vacation and severance pay Jackson seeks under Count One. As explained below, the court denies defendant's motion.

*Judgment Standard*

A motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is subject to the same standard applicable to a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. See *Guise v. BWM Mortgage, LLC*, 377 F.3d 795, 798 (7th Cir. 2004). The court must treat all well-pleaded allegations asserted in the complaint as true, construe the allegations liberally, and draw all reasonable inferences in the light most favorable to the plaintiff. See *Forseth v. Village of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000). Rule 12(c) does not require detailed factual allegations. See *Pisciotta v. Old National Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007). The factual allegations must, however, create support beyond the speculative level for the assertion that the plaintiff is entitled to relief. See *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007); *Pisciotta*, 499 F.3d at 633. Dismissal is warranted if the factual allegations, seen in the light most favorable to the plaintiff, do not plausibly entitle the plaintiff to relief. *Bell Atlantic*, 127 S. Ct. at 1968-69.

The court's consideration of defendant's motion is limited to the pleadings, which consist generally of the complaint and any exhibits or documents attached to or referenced in the complaint. See *Thompson v. Illinois Department of Professional Regulation*, 300 F.3d 750, 753-55 (7th Cir. 2002); *Menominee Indian Tribe of Wisconsin v. Thompson*, 161 F.3d 449, 455-56 (7th Cir. 1998). Here, plaintiff attached two exhibits to his complaint that he identified as copies of ArvinMeritor's vacation pay and severance pay policies. In its motion for partial

judgment on the pleadings, ArvinMeritor attached an updated version of the company's vacation policy, which was in place at the time of Jackson's dismissal, and a copy of the severance policy in its entirety. Plaintiff referred to and relied on both policies in his complaint, and both policies are central to the plaintiff's claim. Defendant's exhibits may thus be considered as part of the pleadings. *See, e.g.*, *Venture Associates Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) (observing that documents a defendant attaches to a motion to dismiss are considered part of the pleadings if the plaintiff refers to the documents in the complaint and the documents are central to the plaintiff's claims).

*Background*

ArvinMeritor, an automobile component manufacturer, employed Benjamin Jackson from June 3, 1996, to December 22, 2006. On December 7, 2006, Jackson represented ArvinMeritor during a career fair at Columbus North High School. While at the fair, Jackson made several inappropriate and harassing comments to some female students also working at the fair. A school employee sent a written report detailing the students' complaints about Jackson's behavior to ArvinMeritor.

On December 8, 2006, ArvinMeritor suspended Jackson pending an internal investigation of the harassment allegations arising from the career fair the day before. Prior to his visit to the high school career fair, Jackson had arranged to

take vacation days from December 19 to December 22, 2006. On December 22, 2006, a human resources manager with ArvinMeritor sent a letter to Jackson notifying him that the company was terminating his employment as of that day for violating the company's sexual harassment policy while representing ArvinMeritor at the job fair on December 7, 2006. Compl. Ex. B.

Both parties agree that by the time ArvinMeritor fired Jackson, he had used all of his vacation time allotted for 2006. ArvinMeritor's vacation policy defined the phrase "vacation period" as a single calendar year beginning January 1. Def. Ex. 1 at 1. The policy provided for the accrual of vacation time in year one for year two based on the employee's years of service prior to year two and on the number of months the employee worked in year one. *Id.* at 2-3. The policy stated that retiring employees were entitled to vacation pay for their unused vacation time for the calendar year in which they retired, as well as for the vacation time they had accrued for the following year. *Id.* at 3. The policy stated that employees who voluntarily terminated their employment were entitled to vacation pay only for their unused vacation time for the calendar year in which they left the company. *Id.* at 4. The policy also stated that employees whom the company involuntarily terminated were entitled to vacation pay only for "Earned vacation, if any, which has not been taken at the time of separation . . . ." *Id.*

ArvinMeritor's separation policy provided for a predetermined "separation allowance" for employees based on an employee's length of service prior to

-4-

termination. At the time ArvinMeritor fired Jackson, he earned $65,000 per year, or $1,250 per week. For employees who had worked for ArvinMeritor for more than ten but fewer than fifteen years, as Jackson had, the policy authorized sixteen weeks of separation allowance payable according to the "local pay period practice." Def. Ex. 2 at 2-3. The policy also disqualified employees terminated "due to voluntary resignation or discharge for cause" from receiving separation allowances. *Id.* at 1.

Jackson sued ArvinMeritor in this court on April 6, 2007, claiming that he is entitled to $79,500 in unpaid vacation, holiday, and severance wages and statutory liquidated damages under the Indiana Wage Claims Statute, Ind. Code § 22-2-9-1 *et seq.* ArvinMeritor moved for partial judgment on the pleadings regarding only the claims for vacation and severance pay, leaving the claim for unpaid holiday wages for later resolution. This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.[1]

*Discussion*

I.  *Vacation Pay*

---

[1] In his Complaint, Jackson asserts that this court has diversity jurisdiction over the non-COBRA claims because ArvinMeritor is a "foreign" corporation. Compl. ¶ 5. ArvinMeritor did not contest diversity jurisdiction, see Answer ¶ 5, but neither party has informed the court of ArvinMeritor's state of incorporation or its principal place of business, both of which are essential to know under 28 U.S.C. § 1332(c)(1). Because of that failure, the court proceeds with jurisdiction over Counts One and Two pursuant to 28 U.S.C. § 1367.

Jackson claims that the language of ArvinMeritor's vacation policy entitles him to four weeks of vacation pay that he accrued for 2007 through his work for the company in 2006. The policy's language is unclear about the vacation the policy mandates the company pay to involuntarily terminated employees. The policy states that the company must pay involuntarily terminated employees for "Earned vacation, if any, which has not been taken at the time of separation . . . ." Def. Ex. 1 at 4. The quoted portion of the policy indicates that ArvinMeritor must pay involuntarily terminated employees for any vacation they earned but did not take before termination, but does not further define the phrase "earned vacation."

The policy includes two other vacation pay provisions. The policy states that ArvinMeritor must pay retiring employees "both the unused vacation in the current calendar year and accrued paid vacation for the coming year." *Id.* at 3. The company calculates accrued paid vacation for retiring employees for the year following their retirement year based on the number of months worked during the retiring year according to a chart included in the policy. *Id.* The policy also states that ArvinMeritor must pay voluntarily terminated employees "for unused vacation time in the current calendar year." *Id.* at 4. The policy clearly limits the company's liability to pay voluntarily terminated employees for unused vacation to only the vacation not yet used in the year they choose to leave the company.

Both provisions quoted in the paragraph just above are quite clear. The drafter intentionally included the phrase "in the current calendar year" in the provision dealing with voluntarily terminated employees and explicitly entitled retiring employees to vacation in both the calendar year and the coming year. The drafter was not nearly as clear in explaining what is meant by "earned vacation" in the provision governing involuntarily terminated employees. The absence of a phrase like "in the current calendar year" in the involuntarily terminated employees provision could signal ArvinMeritor's intention to pay those employees for vacation accrued for any year. The drafter could have determined that employees who choose to leave the company, unlike those whom the company fires, are in a position to choose their exit dates in a way that maximizes their earned benefits.

To counter that possible interpretation, defendant has argued that under the policy, employees must be employed as of January 1 of a particular year to be entitled to vacation pay already accrued for that year. See *id.* at 3 ("An employee is eligible to use their vacation time . . . on January 1st of the new year. However, vacation cannot be carried over from the previous year."). That argument may have force in governing when employees may actually use vacation time they have earned, but it does not appear to govern payments of accrued vacation to departing employees. For example, the provision for retiring employees specifically allows payment for vacation accrued for a year in which the employee did not work at all.

Similarly, ArvinMeritor's reliance on *Damon Corp. v. Estes*, 750 N.E.2d 891 (Ind. App. 2001) is misplaced. In *Damon Corp.*, the Indiana Court of Appeals reversed the trial court's award of $121.14 to the plaintiff for accrued vacation. The company appealed, and the employee never filed an appellee's brief. The company's vacation policy stated: "Employees will receive their vacation pay, when eligible, on the regular payday, the week following their anniversary date. An employee does not earn vacation pay each year until his/her anniversary date." *Id.* at 892. The *Damon* court found that because this language deferred the payment of accrued vacation until after the employee's anniversary date, the employee was not entitled to vacation pay accrued between anniversary dates. Here, the policy limits the actual use of accrued vacation time to a particular calendar year, but by its terms it does not defer payment for accrued but unused vacation unless an employee works on January 1 of the calendar year for which the vacation was accrued. See Def. Ex. 1 at 3 (presenting a table for calculating "accrued paid vacation for the coming year" for retiring employees).

Plaintiff argues that the record is insufficiently developed at this point to address adequately the vacation pay issue. Based on the ambiguity in the policy's language, the court agrees. The vacation pay policy for involuntarily terminated employees is ambiguous as to the meaning of the phrase "earned vacation," and the pleadings do not resolve the ambiguity. At this stage of the case, the court interprets the phrase in the light most favorable to plaintiff to conclude that the

vacation policy might require ArvinMeritor to pay Jackson for vacation he accrued in 2006 to be used in 2007. Defendant's motion for judgment on the pleadings is therefore denied regarding Jackson's claim for vacation pay accrued in 2006 for 2007.

II.   *Separation Pay*

   A.   *Severance Pay As Wages*

Jackson next claims the language of ArvinMeritor's separation policy entitles him to sixteen weeks of separation pay that he earned during his ten and a half years of service. Indiana Code § 22-2-9-1(b) defines "wages" as "all amounts" remunerating the employee for rendering service or labor "whether the amount is fixed or ascertained on a time, task, piece, or commission basis, or in any other method calculating such amount." ArvinMeritor argues that separation pay does not constitute "wages" under the definitions provision of the Indiana Wage Claims Statute, Ind. Code § 22-2-9-1(b).

Defendant relies on *Design Industries, Inc. v. Cassano*, 776 N.E.2d 398 (Ind. App. 2002), in which the Indiana Court of Appeals evaluated a claim for unpaid severance under Indiana Code §§ 22-2-6-1 to -4 (regulating wage deductions). The plaintiff had signed an employment contract that entitled him to a salary extension for nine months in the event of involuntary termination. After employing the plaintiff for a year, the company terminated the plaintiff and paid

his salary nine months past the termination, minus nearly $20,000 in travel expenses. The plaintiff sued for failure to pay the entire amount, claiming – among other things – lost wages and liquidated damages. Recognizing that the statutes the plaintiff invoked did not have a definition for wages, the Indiana court relied on the definition of wages in Indiana Code § 22-2-9-1(b). The court characterized the salary extension as severance pay and determined that the plaintiff's severance pay did not constitute wages under § 22-2-9-1(b). The court reasoned that because the employment contract's severance provision referred to the nine month extension as "salary" rather than "wages," the provision was more akin to an automatic payment than to "compensation for work performed." *Id.* at 404.

The situation here is different. ArvinMeritor's separation policy includes a schedule for increasing the number of weeks of separation pay based on years of continuous service. Def. Ex. 2 at 2. The policy entitles employees who have worked for at least six months but less than one year to two weeks of "separation allowance." The policy entitles employees who work for at least forty years but less than forty-five years to forty weeks of separation allowance. Because Jackson worked for ArvinMeritor for at least ten years but less than fifteen years, the policy would entitle him to sixteen weeks of separation allowance. Unlike the salary extension provision in *Design Industries*, ArvinMeritor's separation pay policy appears to have provided a benefit earned through years of work, not one gained automatically just by signing a contract.

ArvinMeritor also points to *Wank v. Saint Francis College*, 740 N.E.2d 908 (Ind. App. 2000), to support its argument that severance pay based on years of service does not constitute wages under Indiana Code § 22-2-9-1(b).  In *Wank*, the employer eliminated the plaintiff's position when it merged with another school. The employer sent Wank a letter offering a severance package based on years of service in return for Wank signing a "release agreement."  Because Wank refused to sign the agreement, the college refused to pay the severance package.  Wank sued, claiming that the severance package constituted wages under the Indiana Wage Payment Statute, Ind. Code §§ 22-2-5-1, -2, which the college could not withhold because he refused to sign the release agreement.  The court held that the severance package offered in a letter after Wank's termination did not constitute wages under the Indiana Wage Payment Statute because it was "something extra" and more like a bonus than deferred compensation for work performed.  *Id.* at 914.

Citing two cases, the *Wank* court found that severance pay based on years of service did not constitute "wages" under the Indiana Wage Payment Statute. *Id.* at 913.  Both of the cited cases adopted the same narrow definition of "wages" under the Indiana Wage Payment Statute:  "something akin to the wages paid on a regular, periodic basis for regular work done by the employee – the paycheck which compensates for the work done in the previous two weeks."  See *Wilson v. Montgomery Ward & Co.*, 610 F. Supp. 1035, 1038 (N.D. Ind. 1985) (finding that policy calculating severance based on years of service did not constitute "wages"

under the Indiana Wage Payment Statute – a statute of "limited scope . . . designed to insure the regularity and frequency of wage payments"); *Jeurissen v. Amisub, Inc.*, 554 N.E.2d 12, 13 (Ind. App. 1990) (rejecting employees' claim for liquidated damages and attorney fees for trial court's grant of unpaid bonus under Indiana Wage Payment Statute using *Wilson* court's definition of "wages").

In *Johnson v. Wiley*, 613 N.E.2d 446, 449-50 (Ind. App. 1993), however, the Indiana Court of Appeals rejected this narrow definition of "wages" under the Indiana Wage Payment Statute, undermining the *Wank* court's observation that *Wilson* and *Jeurissen* supported the finding that compensation based on years of service does not constitute wages. The *Johnson* court adopted a much broader definition that included "not only periodic monetary earnings, but all compensation for services rendered without regard to the manner in which such compensation is computed." *Id.* at 450 n.3.

Indiana determines whether compensation constitutes "wages" under the Indiana Wage Claims Statute by evaluating whether the compensation is paid based on time worked and is not linked to a contingency such as the financial success of the company. See *Pyle v. National Wine & Spirits Corp.*, 637 N.E.2d 1298, 1300 (Ind. App. 1994) (rejecting claim for bonus under Indiana Wage Claims Statute because the bonus was not linked to the amount of time the employee worked). Here, the policy explicitly ties the amount of severance pay, or separation allowance, to the performance of services. Payment is not contingent

on anything other than the length of the employee's service. The policy would not entitle any employee to any separation allowance until the employee worked at least six months. After six months of service, employees augment their separation pay through their continuous service to ArvinMeritor. Based on the record at this stage, it appears that separation pay under ArvinMeritor's policy may constitute "wages" under the Indiana Wage Claims Statute.

      B.    *Separation Pay Policy Eligibility*

The separation pay policy disqualifies employees terminated "for cause" from receiving any separation allowance. Def. Ex. 2 at 1. Jackson contends that his conduct did not violate ArvinMeritor's sexual harassment policy and that ArvinMeritor has not demonstrated that it terminated Jackson "for cause." Jackson does not seek reinstatement, but he asserts that he did not violate the policy that ArvinMeritor stated was the basis for his termination. See Compl. Ex. B. Believing that its argument that severance pay did not constitute "wages" would resolve the claim, ArvinMeritor did not address the "for cause" issue at all, stating that the issue would be contested later if necessary. Def. Br. at 4 n.4; see also Def. Reply at 5. Accordingly, Jackson's claim for severance pay survives for further factual development.

*Conclusion*

For the foregoing reasons, defendant ArvinMeritor's motion for partial judgment on the pleadings is hereby DENIED.

Date:  January 3, 2008

_____
DAVID F. HAMILTON, CHIEF JUDGE
United States District Court
Southern District of Indiana


Copies to:

Dorothy D. Parson
OGLETREE, DEAKINS, NASH, SMOAK & STEWART
dorothy.koontz@odnss.com

Brandon M. Shelton
OGLETREE, DEAKINS, NASH, SMOAK & STEWART
brandon.shelton@ogletreedeakins.com

Christopher Kenneth Starkey
starkeyck@msn.com