UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| BENJAMIN E. JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:07-cv-0430-DFH-DML |
| | ) | |
| ARVINMERITOR, INC., | ) | |
| | ) | |
| Defendant. | ) | |

ENTRY ON CROSS MOTIONS FOR SUMMARY JUDGMENT

Plaintiff Benjamin Jackson was fired from his job as an engineer by defendant ArvinMeritor, Inc. near the end of 2006. Jackson does not contest ArvinMeritor's right to terminate him, but he argues that the company owes him vacation, severance, and holiday pay and liquidated damages under the Indiana Wage Claims Statute. Ind. Code § 22-2-9-1 *et seq*. He also asserts a claim for criminal conversion of personal property at the employer's location pursuant to Ind. Code § 34-24-3-1(1). Previously, this court denied defendant's motion to dismiss the claims for vacation and severance pay. *Jackson v. ArvinMeritor, Inc.*, 2008 WL 64528 (S.D. Ind. January 3, 2008). Both parties have now moved for summary judgment on all claims.

As explained below, Jackson is not entitled to vacation pay. Under ArvinMeritor's vacation policy, vacation pay accrues at the first of the year.

Jackson was fired "for cause" and therefore was not entitled to severance money. But Jackson is entitled to summary judgment on his claim for holiday pay for the paid holidays of December 25th through 29th and January 1st. While ArvinMeritor claims it fired Jackson on December 22nd, it did not actually send the termination letter until December 29th, and Jackson did not receive it until January 3, 2007. His claim for conversion cannot be determined on summary judgment for either party.

*Jurisdiction*

In his complaint, Jackson asserted that jurisdiction was proper under both 28 U.S.C. § 1331 and § 1332(a)(1). Jurisdiction under § 1331 was based on a claim Jackson brought alleging that ArvinMeritor failed to comply with its federal COBRA obligations, but in briefing on summary judgment, he decided to forego that claim. Summary judgment is appropriate for ArvinMeritor on the COBRA claim, leaving no continuing federal claim for Jackson. With Jackson's decision to abandon the federal claim, the court issued an order to show cause why the court should not relinquish supplemental jurisdiction over the state law claims. (Jackson is a citizen of Indiana, and while ArvinMeritor's headquarters are in Michigan, it is incorporated in Indiana. Without complete diversity, diversity jurisdiction is not available and this court is not required to hear the remaining claims. See 28 U.S.C. § 1332(c)(1).)

In response to the order to show cause, neither party argued that diversity jurisdiction was appropriate, but both parties asked the court to retain supplemental jurisdiction under 28 U.S.C. § 1367(c)(3).  The decision to exercise supplemental jurisdiction is left to the district court's discretion.  *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 172-73 (1997).  The Seventh Circuit instructs that a court "should consider and weigh the factors of judicial economy, convenience, fairness and comity in deciding whether to exercise jurisdiction over pendent state-law claims."  *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir. 1994).  The "general rule" is that the federal court should relinquish jurisdiction over pendent (supplemental) state law claims rather than resolving them on the merits, but there are exceptions.  See, *e.g.*, *Miller Aviation v. Milwaukee County Bd. of Supervisors*, 273 F.3d 722 (7th Cir. 2001) (holding that district court abused discretion by relinquishing supplemental jurisdiction after presiding over case for five years and multiple proceedings).

In this case, three factors lead this court to retain jurisdiction over the state law claims.  First, both parties request that the court retains jurisdiction, alleviating concerns about convenience and fairness.  Second, the state law issues are closely bound to the specific facts of this case:  defendant's policies on vacation pay, severance pay, and other matters.  This decision will not address broadly applicable law that state courts have an especially powerful interest in resolving.  Third, the parties have now already briefed the state law claims twice in this court, first on a motion to dismiss and again on summary judgment.  The

stakes here are modest.  The court need not force the parties to incur the expense and delay of taking their dispute to state court and starting all over again.

The "commonsense policy of pendent jurisdiction" is "the conservation of judicial energy and the avoidance of multiplicity of litigation." *Rosado v. Wyman*, 397 U.S. 397, 405 (1970).  Since both parties want to remain in this court and have spent over a year litigating in this court, this court declines to dismiss the remaining state law claims under 28 U.S.C. § 1367(c)(3) and retains jurisdiction over the remaining state law claims.  See, *e.g.*, *CropLife America, Inc. v. City of Madison*, 432 F.3d 732, 733-34 (7th Cir. 2005) (affirming district court's decision to retain supplemental jurisdiction after dismissing federal claims before trial); *Rothman v. Emory University*, 123 F.3d 446, 454 (7th Cir. 1997) (holding that district court had discretion to retain supplemental jurisdiction over counterclaim after federal claims had been dismissed).

### Summary Judgment Standard

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Summary judgment is appropriate when there are no genuine issues of material fact, leaving the moving party entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party must show there is no genuine issue of material fact.  *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A factual issue is material only if resolving the factual issue might change the suit's outcome under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual issue is genuine if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the evidence presented. *Id.*

In deciding a motion for summary judgment, the court may not make credibility determinations, weigh the evidence, or choose from among different reasonable inferences that might be drawn from the evidence. *Paz v. Wauconda Healthcare and Rehabilitation Centre, LLC*, 464 F.3d 659, 664 (7th Cir. 2006) (reversing summary judgment); *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (reversing summary judgment). The court must view the evidence in the light reasonably most favorable to the non-moving party. *Paz*, 464 F.3d at 664; *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 754 (7th Cir. 2006).

The fact that both sides have filed motions for summary judgment does not alter the applicable standard and does not imply that there are no genuine issues of material fact. *R.J. Corman Derailment Services, LLC v. Int'l Union of Operating Engineers*, 335 F.3d 643, 647 (7th Cir. 2003). The court must consider each motion independently and must deny both motions if there is a genuine issue of material fact. *E.g.*, *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993); *Harms v. Laboratory Corp. of America*, 155 F. Supp. 2d 891, 906 (N.D. Ill. 2001). Thus, in considering cross-motions for summary judgment, the court must

consider the evidence through two lenses.   When considering ArvinMeritor's motion, the court must consider the evidence in the light reasonably most favorable to Jackson.  When considering Jackson's motion for summary judgment, the court must consider the evidence in the light reasonably most favorable to ArvinMeritor.

*Relevant Undisputed Facts*

I.      *Jackson's Termination*

Jackson began working for ArvinMeritor on June 3, 1996 as an engineer. At the time of his termination, he was a salaried employee earning $65,000 per year.  Jackson had no relevant problems in his first nine years in the job.  At the time of his termination, ArvinMeritor's Human Resources Manager was Melissa Ferry.

The basis for Jackson's termination was his conduct at a December 7, 2006 career fair at Columbus North High School.  The fair was organized by Becky Combs and Teresa Weichman, who were part of the C4 Coalition, an educational vocational program of four Southern Indiana counties.   ArvinMeritor sent Jackson, Ferry, and William Crawley to the career fair.  Jackson and Crawley were there to discuss engineering.  Ferry was there to discuss her career in human resources.  Jackson and Ferry were on opposite sides of the gym where the fair

was held.   Ferry saw only that Jackson was talking with students at the cosmetology and health careers booths.  Ferry Dep. 28, 34.

Fair organizer Combs called Ferry on December 8, 2006 to report inappropriate statements Jackson had made to several girls at the fair and to say that Jackson was no longer welcome at the regional career fairs.  Combs Dec. ¶¶ 5-6.  Ferry requested a written report.  Weichman conducted interviews with relevant students and adults who witnessed Jackson's comments.  Her report highlighted three incidents that she found troubling.  Jackson does not deny any of these incidents or their general substance, although minor details are disputed.

The first incident was with a cosmetology student.  Jackson visited her display where she offered him a hand cream.  When she told him to rub the product into his hands, he responded:  "I'll do anything you want me to do."  After this, he asked her, "Now what can I do for you?"  Combs Dec., Ex. A.

The second incident was between Jackson and a group of students.  A female student mentioned the holes in her jeans.  Jackson interjected at that point:  "I get holes in my jeans, but they are in the crotch for other reasons." Combs Dec., Ex. A.

The third incident was with a health careers student.  She reported that Jackson squatted down to chat with her, complimented her outfit, and told her

she had a nice personality.  She thanked him and said it would help her as a nurse.  Jackson then also complimented her hair.  The student became uncomfortable at this point and left the situation.  Combs Dec., Ex. A.

Ferry received the report via email the same day as her phone call with Combs.  After she received the report, she convened a meeting with Jackson, Ferry's supervisor Greg Edwards, and the Director of Engineering, Anthony Hicks. Jackson was given a copy of the report.  Someone in management suggested that Jackson prepare a written response.  Jackson Dep. 57.  At the same meeting, Jackson was told that he was suspended with pay while ArvinMeritor conducted a further investigation.  That suspension was effective immediately, December 8, 2006.

On Monday, December 11, 2006, Jackson responded to Ferry's allegations via email.  Jackson emphasized that he had "clearly been misunderstood" and that his comments had been "taken differently than what was intended."  He thought that his comments about the hole in the jeans had been misconstrued and that, in general, "this is a case of someone going a little overboard and a bunch of people jumping on the bandwagon, something common with adolescents."  He also theorized that Weichman was upset because he had given a poor review to the C4 fair.  Jackson Dep., Ex. 3.

Ferry interpreted Jackson's responses, both in the interview and in his email response, as admissions.  Ferry Dep. pp. 77-78.  Jackson does not seriously contest that he made the statements reported by Weichman, or at least similar statements.  Upon receiving Jackson's email, Ferry and Edwards discussed the situation and decided to investigate further.  Primarily, they were interested in Jackson's supposedly "negative" evaluation.  Combs provided the evaluation, which Ferry testified gave some suggestions for improving the fair.  Overall, Ferry didn't "see it as a negative evaluation."  Ferry Dep. 45.  Combs also told Ferry that she learned that none of the complaining students knew each other, so it was unlikely to have been a coordinated attack on Jackson.  Combs Decl. ¶ 9.

Ferry and Edwards met again after allowing "time to process the information and consider what to do over the course of the next week."  Edwards Decl. ¶ 11.  ArvinMeritor does not submit what date this meeting took place.  When asked in her deposition when the meeting took place, Ferry replied, "I have no idea.  I couldn't tell you."  Ferry Dep. 47.  At this meeting on an unknown date, Ferry told Edwards that ArvinMeritor needed to terminate Jackson.  Edwards agreed.  Edwards Decl. ¶ 12.  Ferry sent a termination letter dated December 22, 2009.  The letter said that as of December 22nd, Jackson was no longer employed due to:

> violation of Human Resources Policy A-14, "Sexual Harassment."  Upon consideration of the facts and information, it has been determined that your actions while representing ArvinMeritor at the C-4 Job Fair at Columbus

North High School on December 7, 2006 were inappropriate and constitute misconduct.

Ferry Dep., Ex. 4.  Despite the December 22, 2006 date, the letter was actually postmarked on December 29, 2006.  Jackson received the letter on January 3, 2007.  Jackson Decl. ¶ 6.

Between his December 8th suspension with pay and his eventual termination, Jackson also took pre-approved vacation time.  He used vacation days on December 19, 20, 21, and 22.  As of December 22, he had used all the vacation he was allowed in 2006.  The last date he was paid for was December 22, 2006.  ArvinMeritor had paid holidays from December 25-29, 2006 and also on January 1, 2007.

After his termination, Jackson returned ArvinMeritor's laptop computer that he had in his possession.  Jackson Decl. ¶ 9.  Jackson asked his immediate supervisor, Ivan Arbuckle, if he could come back to pick up his personal belongings.  Arbuckle told Jackson that he could not return to the facility to collect his things.  Arbuckle's supervisor, Hao Jin, told Jackson that his belongings had been put into three boxes but that only one of those boxes was left.  Jackson retrieved the one box.  He asserts that personal papers, personal items, and a carbon composite prototype tube that was a gift were missing.  Jackson estimates that these belongings have a total value of $250.  Jackson Decl. ¶ 11.

II.    *ArvinMeritor's Official Personnel Policies*

At issue in this case are ArvinMeritor's policies on vacation pay, separation pay, and sexual harassment.  The vacation pay policy was issued August 1, 2004. Under that policy, the "vacation period" is from January 1 through December 31. The number of weeks of vacation in one calendar year was based on an employee's years of service as of December 31st of the prior year.  Based on Jackson's length of service, he would have been entitled to four weeks of paid vacation if he had been employed in 2007.  The policy states:  "An employee is eligible to use their vacation time . . . on January 1st of the new year.  However, vacation cannot be carried over from the previous year."  At issue here is the portion of the policy stating:  "Earned vacation, if any, which has not been taken at the time of separation will be paid prior to and in addition to the separation allowance." ArvinMeritor submits evidence that no employee under this plan has received vacation pay for either involuntary or voluntary termination for the year after the termination.  Nuccio Dec. ¶ 7, Exs. B, C.  Nobody disputes that if Jackson had been employed on January 1, 2007, he would have accrued four weeks of vacation immediately.

The separation pay policy provides for payment to a terminated employee. Based on Jackson's seniority, he was entitled to sixteen weeks of pay if he qualified.  But not all terminations are covered.  The policy states:  "Termination

due to voluntary resignation or discharge for cause disqualifies an employee from receiving a separation allowance." Edwards Dec., Ex. A.

The sexual harassment policy defines sexual harassment as "unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature" in three situations.  None of those situations is pointedly relevant to Jackson's conduct at the high school career fair.  The closest is where: "The conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile or offensive work environment. . . ." Edwards Decl., Ex. B.

*Discussion*

I.    *Vacation Pay*

Jackson claims that ArvinMeritor owes him four weeks of 2007 vacation pay because he had earned that benefit through his work up until the point of his termination.  He argues that Indiana law views vacation pay as deferred employee compensation and that he had already earned the vacation days.   See *Williams v. Riverside Community Corrections Corp.*, 846 N.E.2d 738, 747 (Ind. App. 2006). Whether an employee is entitled to the deferred compensation, however, "must be dealt with on a case-by-case basis taking into account the particular intricacies of the employment relationship between any two parties before the court." *Id*.  In this case, as in *Williams*, "a published policy . . . exists, and its terms are

enforceable to limit the availability of this deferred compensation." *Id.* at 748. Analyzing ArvinMeritor's policy shows that vacation pay accrues on January 1st, and an employee who was involuntarily terminated is not entitled to that vacation unless he is employed as of January 1st.

All employees are entitled to the rest of their vacation for the year in which the employment is terminated.  Retiring employees are also entitled to "accrued paid vacation for the coming year."  The policy includes a pro-ration based on the month in which an employee retires.  For instance, if someone had retired in December 2006 when Jackson was fired, he would be entitled to 11/12 of his vacation time for 2007 because the last full month he worked was November.  The policy has no similar pro-ration provision for terminations.

In the case of a voluntary termination, the employee "will be paid a lump sum for unused vacation time in the current calendar year."  For an involuntary termination like Jackson:  "Earned vacation, if any, which has not been taken at the time of separation will be paid prior to and in addition to the separation allowance."  The voluntary termination employee is paid a lump sum, while the involuntary termination employee is paid out over time, in accordance with the separation policy.  No reference to the method of payment is made for retiring employees.

This court earlier confronted the confusion surrounding vacation time in ArvinMeritor's motion to dismiss and determined:

> The vacation pay policy for involuntarily terminated employees is ambiguous as to the meaning of the phrase "earned vacation," and the pleadings do not resolve the ambiguity.  At this stage of the case, the court interprets the phrase in the light most favorable to plaintiff to conclude that the vacation policy might require ArvinMeritor to pay Jackson for vacation he accrued in 2006 to be used in 2007.

2008 WL 64528, at *4.  Since that motion was decided, ArvinMeritor has compiled records on how each employee was treated under this policy since 2003.  During that time, not a single person fired for misconduct has received payment for vacation days in the year following the termination.  Nuccio Decl., Ex. C-E.

This undisputed evidence about how ArvinMeritor actually applies the policy resolves the tension created by the different language for treating retirees, voluntary terminations, and involuntary terminations.  The general thrust of the plan is that January 1st starts as the new threshold for vacation time.  All vacation rights for the coming year are given on that day and must be used within that calendar year.  The plan specifies that only those people "who have worked in the current calendar year are covered under this Policy."  As of January 1, 2007, ArvinMeritor had already sent Jackson's termination letter and he was not an employee who earned vacation pay for 2007.

This reading of the vacation policy is also supported by ArvinMeritor's vacation policy for new hires.  For the year that they are hired, ArvinMeritor distinguishes between employees hired before and after May 1st.  There is no such distinction for the subsequent year.  The result of this policy is that a person hired on January 2, 2007 and another hired on December 30, 2007 are both entitled to the same amount of vacation in 2008.  This shows that the 2008 vacation was not truly being earned throughout 2007 and is not deferred compensation based on the work in that year.[1]  By analogy, Jackson's eleven-plus months of work in 2006 did not "earn" him vacation time in 2007 when he was not employed on January 1, 2007.  Because ArvinMeritor's vacation pay accrues on January 1st and Jackson was no longer employed on that date, ArvinMeritor is entitled to summary judgment on the vacation pay claim.

II.     *Severance Pay*

ArvinMeritor sets forth two reasons why it should be entitled to summary judgment on the issue of severance pay.  First, it argues that severance pay is not a "wage" as defined in the Indiana Code.  Second, it argues that Jackson's termination was "for cause" and that he was therefore not entitled to separation pay.  The previous entry on the motion to dismiss thought it likely that separation

---

[1]In parsing the policy, the reader sees that the person hired before May 1 is specifically told that her two weeks of vacation will be "with pay," while no such provision is made for the person hired after May 1.  The overall policy, however, states that "ArvinMeritor will grant vacation with pay to all salaried (exempt and non-exempt) non-represented employees based on their length of service."  All vacation is with pay despite the inconsistent use of the term.

pay under ArvinMeritor's policy would constitute "wages" under the wage claims statute.  This court does not need to investigate that issue further, however, because the undisputed facts show that Jackson was fired for cause and not entitled to severance pay under the terms of the ArvinMeritor's separation pay policy.

Both parties agree that Jackson was fired based on his conduct at the career fair.  Jackson contends that he violated no written ArvinMeritor policy, so that his discharge was not for cause.  According to Jackson, "it does not seem reasonable to allow [ArvinMeritor] to add unwritten acts that would constitute 'discharge for cause' that would disqualify an employee from receiving separation pay."  Pl. Br. at 13.  Jackson then argues that he did not actually violate the sexual harassment policy because the terms of that policy refer only to fellow ArvinMeritor employees.

This juxtaposition, however, is where Jackson's argument runs into trouble. It is not difficult to imagine much more reprehensible behavior by Jackson at the job fair that still would not have been sexual harassment under the terms of the policy.  By Jackson's logic, if he had inappropriately touched, propositioned, or said something more vulgar to a student, he still could not have been fired "for cause."  As he states in his own brief, "it would have virtually been impossible" for Jackson to violate the sexual harassment policy at the career fair.  Pl. Br. 15.  The

fact that his conduct was not a violation of a specific ArvinMeritor policy is not conclusive as to whether the termination was "for cause."

Jackson also argues that the fact he did not violate the sexual harassment policy is relevant because it was the stated reason for his termination.  The letter of termination stated that Jackson's employment "has been terminated due to violation of Human Resources Policy A-14 'Sexual Harassment.'"  The next sentence stated more broadly that Jackson's actions at the job fair "were inappropriate and constitute misconduct."  Ferry Dep., Ex. 4.  Despite this broader language, the stated reason for termination is a violation of the sexual harassment policy.  In this case, ArvinMeritor in effect applied its sexual harassment policy for interactions within the work place to interactions with high school students.  While the actual letter of the policy was not violated, Jackson's actions would also be inappropriate if directed toward suppliers, customers, or other visitors to ArvinMeritor, none of whom are specifically protected by the sexual harassment policy.

Whatever the text of the letter said, Jackson was aware that his conduct at the job fair was the reason for his termination, and all parties agree that he was fired for his conduct at the job fair.  Given these circumstances, the exact wording of the letter, which cites a sexual harassment policy that Jackson did not technically violate, is not proof that termination was not for cause.

Jackson seems to admit that some level of conduct is so bad that it would allow for termination for cause, even though the conduct is not proscribed by the rules.[2]  He argues, however, that his conduct was not sufficiently bad to warrant this termination.  This court must determine whether Jackson's conduct at the career fair provided sufficient cause, within the meaning of the severance pay policy, for ArvinMeritor's decision to terminate him.

Defendant cites one court's interpretation of "for cause" in a statutory setting, under the Uniformed Services Employment and Reemployment Act.  In *Ferguson v. Walker*, 397 F. Supp. 2d 964 (C.D. Ill. 2005), the court noted that "for cause" was not defined in that statute.  The court relied on a series of older Seventh Circuit cases under the Selective Training and Service Act of 1940 that defined "cause" as "'such [cause] as a fair-minded person may act upon' and 'not a mere excuse or an arbitrary action to avoid the provisions of the statute.'" *Id.* at 972, quoting *Keserich v. Carnegie-Illinois Steel Corp.*, 163 F.2d 889, 890 (7th Cir. 1947) (Minton, J.); see also *Foor v. Torrington Co.*, 170 F.2d 487, 490 (7th Cir. 1948) (defining "for cause" as "whether or not the discharge by the employer was a reasonable one under the circumstances"), quoting *Kemp v. John Chatillon & Sons*, 169 F.2d 203, 207 (3d Cir. 1948).

---

[2]Jackson considers this a "legally reasonable position."  Citing the Incompleteness Theorems of mathematician Kurt Gödel, he notes that it is "logically impossible" to list all situations that would constitute firing for cause.

The older Seventh Circuit precedents may go further than would be applicable in this case, as *Foor* goes so far as to theorize that cause for discharge "may arise from severe adverse economic conditions." *Foor*, 170 F.2d at 490. Under the provisions of ArvinMeritor's severance pay policy, it seems clear that the actions that led to the termination must have been within the control of the employee. Nonetheless, termination based on Jackson's admitted conduct at the job fair was "reasonable under the circumstances" and "not a mere excuse or an arbitrary action."

Accepting Jackson's version of events, as this court must in considering ArvinMeritor's motion for summary judgment, Jackson attended a job fair as a representative for ArvinMeritor and put several female high school students in uncomfortable situations. In a short period of time, he referenced his pants ripping in the crotch and made several girls feel uncomfortable in separate incidents. Although this conduct was not as troubling as some of the evidence and allegations the court sees frequently in sexual harassment cases under Title VII of the Civil Rights Act of 1964, as a result of these actions, the career fair requested that Jackson never be sent again. Jackson does not deny the allegations. He argues only that all the girls misinterpreted him. The fact that they all were sufficiently troubled to report the conduct shows that Jackson does not understand how his actions are interpreted. ArvinMeritor was presented with evidence that an adult male employee representing the company at a career fair had made a series of teenage girls uncomfortable by his comments and actions.

On the undisputed facts in this case, ArvinMeritor reasonably decided that Jackson's conduct justified termination "for cause."   ArvinMeritor's motion for summary judgment on the termination pay benefits is granted, and Jackson's is denied.

III.   *Holiday Pay*

On the question of holiday pay, Jackson is entitled to summary judgment for holiday pay between December 25th and December 29th and on January 1st. Jackson finished taking pre-approved vacation time on December 22nd. ArvinMeritor claims that it fired Jackson effective that day.  The letter terminating Jackson was dated December 22nd, but it was not mailed until December 29th. Jackson testified that he received the notice on January 3, 2007, and that fact is undisputed for purposes of summary judgment.  Jackson Aff. ¶ 6.  ArvinMeritor asserts that it contacted Jackson to notify him of his termination through that letter, and it provides no evidence that Jackson knew before receipt of the letter that he was terminated.   Nor has ArvinMeritor explained why it took such a leisurely approach to informing Jackson that he was being fired.  From December 22nd to January 3rd, Jackson assumed that he was still on paid suspension and held himself available to return to work at ArvinMeritor.

ArvinMeritor asserts that Jackson is not entitled to wages because he did not work for them after December 8th.  If that were the case, a paid suspension

would be an illusory promise.  An employer could retroactively decide not to pay the employee because he offered no service.  Instead, the implicit promise of the employee on paid suspension is to hold himself available for a return to work, which Jackson did until the receipt of his termination letter.  Regardless of when ArvinMeritor wrote or mailed the letter, the fact that Jackson held himself open to return to work entitles him to pay for six holiday days during that time. ArvinMeritor is not entitled to deny him his holiday pay for paid company holidays that occurred while Jackson still believed he was employed by ArvinMeritor. Summary judgment for Jackson on the holiday pay issue is appropriate.[3]

Jackson's salary when he was fired amounted to $250 per day.  He is entitled to six days of vacation pay, totaling $1,500.  In addition, Ind. Code § 22-2-5-2 states: "Every . . . corporation . . . who shall fail to make payment of wages . . . shall, as liquidated damages for such failure pay to such employee for each day that the amount due to him remains unpaid ten percent (10%) of the amount due . . ., not exceeding double the amount of wages due."  Since Jackson's wages were due over a year ago, this court must award him as liquidated damages "double the amount of wages due," or $3,000.  Total recovery on his vacation pay claim is $4,500, as well as an appropriate attorney fee and court costs.

---

[3]Jackson's reliance on the fact that he was still employed at ArvinMeritor distinguishes the court's ruling in his favor on the holiday pay from the ruling in favor of ArvinMeritor on the vacation pay claim, where there was no reliance during the relevant weeks of his suspension.

IV.    *Conversion*

Jackson's conversion claim is not appropriate for summary judgment for either party.  There are disputed material facts regarding intent and value.  In Jackson's affidavit, he claims that ArvinMeritor employee Hao Jin told him that his belongings had been put in multiple boxes but that only one box was left.  Jackson sets forth those items that he said were missing, including a carbon composite prototype tube, and puts a total value of $250 on the property.  Contrary to ArvinMeritor's assertions, Hao's statement is not inadmissible hearsay but is an admission by a party-opponent.  The statement was made by Hao, an employee of ArvinMeritor, acting within the scope of his employment, and made during his employment.  See Fed. R. Evid. 802(d)(2)(D).  Given Hao's statement, summary judgment for ArvinMeritor is inappropriate.  An employee of ArvinMeritor, according to Jackson, admits that some of Jackson's property was discarded.  This admission stands unrebutted in the record.

ArvinMeritor's alternative defense is that Jackson has not shown that ArvinMeritor had the requisite criminal intent.[4]  To show criminal conversion, the plaintiff must show both that control over the property was unauthorized and that the defendant "was aware of a high probability that this control was unauthorized."  *Midland-Guardian Co. v. United Consumers Club, Inc.*, 499 N.E.2d

_____

[4]It appears that within the scope of the pleadings, Jackson might also have a common law claim for civil conversion, which would not require proof of criminal intent. The parties have not submitted sufficient evidence for this court to make a summary judgment ruling on such a claim.

792, 798 (Ind. App. 1986).  Giving Jackson the benefit of favorable inferences, a reasonable jury could find from Jackson's testimony about admissions by Hao that the ArvinMeritor employees knew that the property was Jackson's and intentionally disposed of it.[5]

Jackson's motion for summary judgment on the conversion claim must also be denied, however, because construing the facts most favorably to ArvinMeritor, the disposal could have been an honest mistake.  ArvinMeritor did return one box of Jackson's possessions to him, and ArvinMeritor searched for Jackson's possessions after it was informed they were missing.  Edwards Decl. ¶ 24. ArvinMeritor did not provide any statement from Hao or from Jackson's immediate supervisor Arbuckle to refute Jackson's statements in his affidavit.  The only evidence it provided was Edwards' statement that ArvinMeritor searched for Jackson's belongings.  This lack of evidence could lead a jury to find for Jackson. The lack of evidence could also be ArvinMeritor's lack of knowledge which coupled with its good faith return of one box of possessions would undermine the necessary intent for a criminal conversion claim.  The issue of ArvinMeritor's intent in the disposal of Jackson's materials after his termination must be decided by a jury.

---

[5]ArvinMeritor also argues that Jackson's damages are "speculative" because he stated in his complaint that his damages are $1,000 but said in deposition that the property was worth $250.  Jackson reiterated the $250 figure in briefing, and that is the value he now ascribes to his personal property that was allegedly not returned to him.

*Conclusion*

ArvinMeritor's motion for summary judgment (Dkt. No. 43) is granted with regard to vacation and severance pay and otherwise denied.  Jackson's motion for summary judgment (Dkt. No. 48) is granted on the issue of holiday pay and otherwise denied.   This court will hold a status conference to discuss the remaining conversion claim on Friday, June 26, 2009 at 9:00 a.m. in Room 330, Birch Bayh U.S. Courthouse, Indianapolis, Indiana.   Mr. Jackson and a representative of ArvinMeritor with full authority to settle the entire case shall be present in person.


So ordered.

Date: May 27, 2009

_____
DAVID F. HAMILTON, CHIEF JUDGE
United States District Court
Southern District of Indiana

Copies to:

Christopher Kenneth Starkey
starkeyck@msn.com

Brandon M. Shelton
OGLETREE, DEAKINS, NASH, SMOAK & STEWART
brandon.shelton@ogletreedeakins.com

Dorothy D. Parson
OGLETREE, DEAKINS, NASH, SMOAK & STEWART
dorothy.koontz@odnss.com